308 So.2d 520 (1975)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS
v.
Israel P. BANQUER et ux.
No. 6580.
Court of Appeal of Louisiana, Fourth Circuit.
February 13, 1975.
*521 Johnie E. Branch, Jr., D. Ross Banister, William W. Irwin, Jr., and Jerry F. Davis, Baton Rouge, for plaintiff-appellant.
Joseph F. Grefer, Gretna, for defendants-appellees.
Before SAMUEL, GULOTTA and SCHOTT, JJ.
SAMUEL, Judge.
Acting under the provisions of LSA-R. S. 48:441-460, the State of Louisiana, through the Department of Highways, instituted this suit expropriating, for highway purposes, certain property owned by the defendants. At the time suit was filed the Department deposited $2,026 in the registry of court as its estimate of just compensation for the property expropriated. Defendants answered, contesting the value of the land taken, averring its true value was $10,000, and additionally asking $20,000 as severance damages.
After trial there was judgment placing the value of the expropriated land at $2,900, awarding the defendants that amount less the $2,026 deposited, and additionally awarding the defendants $9,400 for severance damage. The Department has appealed and the defendants have answered the appeal praying that the value awarded for trees which were damaged and/or removed be increased to the sum of $900[1] and that severance damages be increased to the sum of $16,160.
The issues presented are: (1) whether or not the trial court made a $200 mathematical error in the value of the land as allegedly shown by the amount specified in the reasons for judgment ($2,700) and the amount of the actual award ($2,900); (2) the amount of severance damage, if any, to the remainder or unexpropriated portion of the property; (3) whether there were special benefits to the remaining property which would offset in whole or in part any severance damages; and (4) the value of the trees.
(1) The $2,900 judgment for the property taken consisted of the sum of *522 $2,400 for the land, based upon an evaluation of $1.30 per square foot, $250 for trees, and $50 for concrete walkways. The Department does not contest the evaluation. However, the judgment of $2,900 is $200 more than the trial court's findings as outlined in its reasons for judgment. We agree this is a mathematical error and we will make the necessary correction.
(2 and 3) The property is located in the Parish of Jefferson. It fronts on Barataria Boulevard at the corner of 13th Street. Prior to the taking it consisted of $13,001.97 square feet (100'× 130'× 100' × 130.06'), and after the taking it contained 11,147.93 square feet (100' × 95.69' × 100' × 110.41'). The taking, for the purpose of widening Barataria Boulevard so that it will contain four, instead of its present two, traffic lanes, was from the front facing Barataria Boulevard with a flare at 13th Street for a turning lane.
Situated on the remainder of the property is a brick veneer residence and garage. The residence faces Barataria Boulevard with a side entrance on 13th Street, on which side is the bedroom wing. Prior to the taking the nearest edge of the residence was approximately 36' from the old highway right-of-way line and 55' from the traveled portion thereof. After the taking the nearest edge of the residence was approximately 16.78' from the new right-of-way line, and approximately 29' from the traveled portion of the new highway. The property is zoned R-1 Residential. The residence, built on two lots, is a four bedroom, three bath household. The grounds were nicely landscaped. The property expropriated is approximately 19.55' across the entire width fronting on Barataria Boulevard and contains 1,854.04 square feet.
At the trial each party produced two expert appraisers. Those testifying on the behalf of the Department were Charles A. Deano, whose testimony was perpetuated by deposition and later introduced into evidence, and Charles L. O'Brien. Robley J. Gelpi, Jr. and Angus Eason testified on behalf of the defendants. As there is no complaint on appeal regarding the value set by the trial court on the property expropriated (other than trees), we are not concerned with their testimony insofar as that item is concerned.
Defendants' appraisers were of the opinion the land remaining after the taking, and the improvements, had sustained severance damages because of the proximity of the new highway to the house, noise, fumes, vibration from large trucks, debris and a hazardous curve. On the other hand, the Department's appraisers were of the opinion there was no damage to the remaining land and improvements; that, in fact, the construction of the new highway facility, when completed, would be beneficial to the subject property. Mr. Bridges, an engineer for the Department, testified that the slight curve of two degrees contemplated in the roadway would not cause any difficulty, and a driver losing control of his vehicle would more likely cross into the median of the new highway or away from, rather than into, the subject residence. The latter possibility was mentioned by the defendants' appraisers.
Particularly impressive to us is the fact that prior to the taking the property was 36' from the old right-of-way and 55' from the traveled portion of the old two lane highway, and following the taking it was only 16.78' from the new right-of-way and 29' from the traveled portion of the new four lane highway. Defendants' experts point in particular to the loss of privacy of the front yard and the loss of the property's appeal as an "estate type" home of interest to large families. Mr. Eason's estimate of severance damages was $16,160 and Mr. Gelpi's estimate of severance damages was $8,500.
In addition to an award for land taken, our law recognizes that a property *523 owner is entitled to recover damages caused by expropriation to the remainder of the property.[2] Absent other possible considerations not present here severance damages allowable as a result of an expropriation consist of the difference between the market value of the remaining property immediately before the taking and its diminished value as of the date of trial. Severance damages to the remaining property cannot be presumed, and such damages will not be awarded unless the owners show by competent evidence the value of the remaining land has been diminished by the taking.[3]
Relying on the guidelines set forth in State, Dept. of Highways v. Singletary, La.App., 185 So.2d 642, namely, that the court must be guided by the testimony of expert appraisers, if reasonable; that local experts in the area of the property are entitled to greater weight than testimony of experts without such actual and practical experience; that each expropriation must be considered in the light of its own circumstances; and that where there is wide divergence of expert opinion the court must determine which opinion is well grounded, the trial court arrived at a valuation of severance damages in the sum of $9,400.
This valuation was reached in part as a result of the fact that the parties stipulated the sum of $43,000 as a reproduction cost of improvements to plaintiffs' property. The court subtracted therefrom the resale value at the time of trial based on Mr. Gelpi's estimate. Defendants' claim the trial judge should have been guided by Mr. Eason's estimate rather than by Mr. Gelpi's. As has been mentioned, both appraisers testified on behalf of the defendants.
Plaintiffs contend no severance damages are due because of special benefits accruing to the owners of the remaining land by virtue of the new highway construction so as to effect an offset of severance damages. The Department's experts were of the opinion a superior four lane highway is preferable to the two lane highway which formerly existed; that the noise, traffic and other hazards in connection with highway traffic existed prior to the taking; and that the property is not damaged by a loss of privacy because the house is surrounded by good landscaping, including high hedges, insuring the privacy of the bedroom areas.
Our study of the record convinces us that the remainder of the property, in particular the home, did suffer severance damages and that the amount allowed by the court in the sum of $9,400 was neither excessive or inadequate. And, especially considering the increase in the amount and speed of traffic resulting from construction of two additional lanes, we are of the opinion, as was the trial judge, that no special benefits accrue to the remainder of the residential property in suit.
(4) In connection with the expropriation, two oak trees were removed and one, with its roots exposed, remained. The trial court allowed the sum of $250 for these trees. Defendants have asked us to increase this award to the sum of $900. Mr. Eason, their appraiser, evaluated the trees at $300 each. When questioned about the health of the remaining tree which he had seen the previous week he testified that "I did not pay too much attention to it but I understand from Mr. Banquer's [one of the owners] testimony that it is in good condition." He "believes" the roots to be *524 exposed and therefore the remaining tree was damaged 50%.
Mr. O'Brien, a Department expert, testified the tree taken on the northwest corner of the property was a 22' oak and the tree at the southwest side of the property was a 25' oak. The one in the southwest corner would shade the yard south of the house, but the other one was so far removed from the house it did not provide any substantial shade benefit. They were nice looking and good appearing trees and he felt they added a land value increment of $150. He made it clear he did not infer a 22' oak tree could be bought from a nursery for $75 but trees of that nature add or contribute to the value of the land. He did not observe the roots of the remaining tree.
Defendants seek a valuation of $300 per tree separate from that of the evaluations of the land. The State has correctly valued the trees as part of its evaluation of the expropriated land and not as a separate item. (See State, Department of Highways v. Jenkins, La.App., 207 So.2d 380, and cases cited therein.) The record does show that the loss of the two, and possibly the three, trees caused a reduction in the value of the remainder of the land in that it caused the remaining land to be somewhat less desirable. However, we are of the opinion that the defendants have not sustained their burden of proving damages in a higher amount than the $250 awarded by the trial judge and that said award is neither excessive nor inadequate.
For the reasons assigned, the judgment appealed from is amended by reducing the award for the property expropriated from the sum of $2,900 to the sum of $2,700, which award is subject to a credit in favor of the Department of Highways in the amount of $2,026. As thus amended, and in all other respects, the judgment is affirmed.
Amended and affirmed.
NOTES
[1] The award for the trees was $250, an amount included in the value of the land taken.
[2] LSA-R.S. 48:453; Trunkline Gas Co. v. Verzwyvelt, La.App., 196 So.2d 58; United Gas Pipeline Company v. LeBlanc. La.App., 243 So.2d 912; State, Dept. of Highways v. Daigle, La.App., 278 So.2d 525; State, Dept. of Highways v. Myrick, La.App., 258 So.2d 157; State, Dept. of Highways v. Bagwell, La.App., 255 So.2d 852; State, Dept. of Highways v. Teekell. La.App., 211 So.2d 712; State, Dept. of Highways v. Jenkins, La.App., 207 So.2d 380.
[3] State, Department of Highways v. Daigle, supra, footnote 2; Michigan Wisconsin Pipeline Co. v. Fruge, La.App., 207 So.2d 606; State, Dept. of Highways v. Reddell Creosote Co., La.App., 252 So.2d 721.