JONES, Judge.
This appeal arises out of an expropriation pursuant to LSA-R.S. 48:441 et seq. The Department of Highways expropriated 1.593 acres of a 4.493 acre tract owned by defendant for construction of Inner Loop Expressway, for the widening and improvement of Linwood Avenue and for widening and improvement of Idema Street. The lower court awarded defendant $27,100 for the property taken and $7,500 for severance damages to the remainder. The Department appeals complaining of the severance damage award and defendant answers seeking an increase in both awards. We affirm.
The estimates of value of property taken given by the three appraisers who testified are remarkably similar. One of the state’s appraisers estimated the value at $25,500; another estimated it at $27,100, and defendant’s appraiser estimated its value at $27,-756. Defendant advanced no serious arguments of error on the part of the trial judge to justify an increase in the award for the property taken. The only issue remaining is severance damages.
Prior to the taking defendant owned a rectangular tract of land fronting 300 feet on the north side on Inner Loop Parkway (a two-lane, east-west asphalt road connecting Linwood and St. Vincent), fronting 614 feet on the west side on Linwood Avenue (a two-lane, major north-south thoroughfare) and fronting 300 feet on the south side on Idema Street (a short two-lane, dead end, oil/dirt surfaced road which provided access to Linwood Ave. for a few residences and trailer homes east of the subject property). The highest and best use of this vacant, unimproved tract is for commercial development.
After construction is completed, defendant’s property will be located in the southeast quadrant of the Linwood Avenue — Inner Loop Expressway interchange. Idema Street will be widenéd, hard-surfaced and extended to serve as the eastwest artery between Linwood and St. Vincent, replacing Inner Loop Parkway which is now incorporated in the expressway.
Severance damages are an award made to the owner to compensate him for decrease in value of the remainder of his property due to partial taking and are defined as the difference between the value of the remaining property before and after the taking. State, Department of Highways v. Denham Springs Development Company, Inc., 307 So.2d 304 (La.1975); State, Through Department of Highways v. Hoyt, 284 So.2d 763 (La.1973).
Defendant’s expert, O. L. Jordan, found the remainder sustained damages of 33V3% of the value of the remainder which was determined by deducting the value of the property taken from the value of the total tract prior to taking. He valued the remainder at $50,530, which is slightly in excess of $17,000 an acre, and found severance damages to be $16,844. The reasons given by Jordan for the percentage of diminution in value of the remainder were: (1) a reduction in size of the tract from 4.493 acres to 2.9 acres, or a reduction in plottage of 35.45%; (2) the change in shape of the property from a near rectangular tract to an irregularly shaped tract and (3) the extensive loss of access.
This expert stated the smaller, irregularly shaped area is far less desirable for commercial development than the subject property prior to taking. The loss of access is a result of the taking by the controlled access facilities. The previously existing 300 foot *1088 access along the north end of the property has been totally eliminated and the 614 foot access previously existing on the west side has been reduced to 246 feet on the southern end of the remainder. There was a concrete barrier constructed in the center of Linwood which has the effect of creating a boulevard out of Linwood. Southbound traffic on Linwood is further limited in access by an additional 70 feet because the barrier obstruction makes it impossible for traffic to turn left across Linwood into the remainder of the property until it reaches a point 176 feet north of the southwest corner of the remainder. The expert opined this extensive reduction of access on the remainder substantially decreased its desirability for commercial development.
It was developed at trial defendant’s expert was unaware the narrow, unimproved Idema Street was included in the overall highway improvement program in connection with the Inner Loop Expressway. The trial judge noted this oversight on the part of defendant’s expert in connection with Jordan’s determination of severance damages. The trial court believed the property sustained severance damages primarily because of the loss of access and found the amount of those damages was $7,500, rather than the amount determined by Jordan. The amount of the trial court’s award was 15% of the after-taking value as established by Jordan.
Plaintiff’s experts in their appraisals found the value of defendant’s remainder subsequent to the taking to be worth more than it was prior to the taking, and for this reason concluded plaintiff suffered no severance damages. Plaintiff contends the opinion of Jordan should be disregarded because it was based upon a percentage estimate not supported by comparables. Plaintiff contends the opinion of its experts based upon comparable “after taking” sales established there was no severance damages.
We find the comparables relied upon by plaintiff’s experts not convincing or persuasive as to the “after taking” value of defendant’s property. One of the compara-bles used by plaintiff’s experts involved a .537 acre tract sold in April, 1975 for $39,478. The purchaser of this small tract owned a business across the street from the comparable and was very anxious to buy it. Under these circumstances this sale has relatively little value as a comparable. The remaining two comparables relied on by plaintiff’s experts consisted of sales which occurred in 1976, more than three years following the taking.
None of the three comparables relied upon by these experts had any legal limitation of access. There was a weak effort on the part of these appraisers to establish a physical limitation of access caused by a ditch and bridge on one of the comparables used. They gave no indication as to the extent of physical access limitation nor offered any explanation of the cost of its removable.
The sales price on one of the 1976 compa-rables reflects an acreage value of $18,096, and when the appraiser adjusted it for the time lapse between the taking and the sale, it reflected an indicative acreage value of subject property of $14,118. With this adjustment and no more this comparable would have supported a severance award in excess of that allowed by the trial court. However, the appraiser applied a 50% upward adjustment because he stated the comparable was located in an inferior location and found the comparable reflected an indicated acreage value of the subject property of $21,000.
The sales price of the second 1976 comparable reflects an acreage value of $18,719 and when adjusted by the appraiser for the time factor, reflected an acreage value of $13,196 as indicative value of the subject property. With this adjustment and no more this comparable would support a severance award greater than that allowed by the trial court. The appraiser again applied a 50% upward adjustment for the comparable’s inferior location and found it reflected an indicated acreage value on the remain *1089 der of $23,100.[1] The other state appraiser who used this comparable reached almost identical results.
Both 1976 comparables are corner locations in the proximity of the Inner Loop Expressway and have no limitation of access other than one of them has the ditch and bridge above mentioned. For these reasons there is a substantial question as to whether these two locations could be said to be inferior to the location of the subject property.
The appraisal technique of adjusting upwards the value of the comparable by 50% based upon the superior location of the property constitutes a determination that subject property has received a special benefit by being located in the quadrant. It is only a special benefit that plaintiff is entitled to use as an offset against defendant’s damages suffered by loss of access. Louisiana Highway Commission v. Grey, 197 La. 942, 2 So.2d 654 (1941); State, Department of Highways v. Westport Development Company, Inc., 332 So.2d 918 (La.App., 2d Cir. 1976). Plaintiff has the burden of establishing defendant’s property has received a special benefit. Louisiana Highway Commission v. Grey.
The fact alone that a remainder is within the quadrant of an interchange does not establish its value has been substantially increased because of its peculiar location following the taking. While its value may have increased by being in the proximity of the interchange, this increase does not necessarily differ from the increase in value of other locations in the vicinity of the interchange. This type of increase in value is a general benefit which cannot be offset against damages for loss of access. State, Department of Highways v. Westport Development Company, Inc.
For the subject property to be designated a superior location and recipient of a special benefit, the evidence must establish that with regard to the following factors it is superior:
“ * * * [T]he volume of traffic, both from the Interstate and from the cross-highway; the position of the remainder with regard to being the most available for motorists leaving the expressway; the visibility of the property to expressway motorists before they reach the exit ramp; readiness of access to and from the expressway and the entrance ramp; the location of the interchange with regard to population centers; and competing sites available at the same or nearby interchanges.”
State, Department of Highways v. William T. Burton Industries, Inc., 219 So.2d 837 (La.App., 3d Cir. 1969) at page 843.
The evidence in this record does not establish the subject property’s superiority. Under the circumstances plaintiff’s appraisers were not justified in applying a 50% upward adjustment on their compara-bles because of an alleged superior location of the subject property. We cannot find the trial judge committed manifest error in disregarding the appraisals of plaintiff’s experts.
Common sense supports defendant’s expert’s opinion that a smaller, irregularly shaped piece of commercial property with limited access to public roads is worth less than it was when part of a larger, regularly shaped tract with full access to public streets along the complete length of the north, west and south boundaries. A determination of diminution in value based upon a percentage of the remainder is an acceptable appraisal practice. City of Lafayette v. Babineaux, 297 So.2d 220 (La.App., 3d Cir. 1974); State, Department of Highways v. Tyler, 326 So.2d 349 (La.1976); State of Louisiana, Department of Highways v. Bland, 355 So.2d 283 (La.App., 2d Cir. 1977).
Because of the failure of defendant’s expert to consider the substantial improvement in the quality of access on Idema *1090 Street, the trial court reduced the percentage of diminution in value from 33V3% to 15%.' This finding which is supported by the evidence is within the discretion of the trial judge. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
Affirmed.

. Prior to making the 50% upward adjustment for inferior location, the appraiser made a 25% upward adjustment for inferior topography on the comparable. We observe the second appraiser obtained almost the identical indicative after value acreage of the subject property by use of this comparable without the adjustment for inferior topography.