HALL, Judge.
These three appeals arise out of two expropriation suits filed by Cajun Electric Power Cooperative, Inc. seeking to expropriate two tracts of land in Red River Parish for the site of a lignite-powered electric generating plant and related distribution facilities to be constructed by the plaintiff. One tract contains 20 acres and is owned by the Thomas defendants. The other tract contains 200.50 acres and is owned by the Campbell defendants.
At trial the only expert opinion evidence as to value was given by the plaintiff’s appraiser who estimated the value of both tracts, exclusive of mineral rights which were to be reserved, at $2,250 per acre. The trial court, taking into consideration one or two sales of other property in the parish for higher prices and the inconvenience to defendants in exercising their reserved mineral rights because of plaintiff’s intended use of the surface of the property, fixed the value of the Thomas tract at $2,500 per acre and the value of the Campbell tract at $3,000 per acre. From judgments rendered accordingly the plaintiff appealed contending the awards were excessive. The Thomas defendants also appealed, contending the award for the value of their property taken is inadequate. The Campbell defendants did not appeal. Finding that there is no evidentiary basis supporting an award in excess of the value estimated by plaintiff’s expert appraiser, we amend the judgments to reduce the amounts of the awards to $2,250 per acre.
Both tracts are located in rural Red River Parish within a quarter of a mile of each other. The Thomas 20-acre tract is cutover hardwood bottom land without any road frontage, being located about three-quarters of a mile from the nearest road. The *1003 Campbell 200-acre tract is bottom land with some road frontage presently in agricultural use for the growing of soybeans.
In appraising the subject properties plaintiff’s expert appraiser, James A. McNew, took into account the general upswing in economic conditions in Red River Parish brought about by the location of a new large paper mill, lignite operations and other factors, all of which had brought about an increase in property values. He noted that farm land with road frontage has some increased value because of the possibility of use for rural homesites.
The appraiser determined that the highest and best use of the Thomas tract is for agricultural purposes, noting that there would be some cost of converting this property from cutover timber land to farm land. He determined that the highest and best use of the Campbell tract is for agricultural purposes with possible use for rural residential purposes. Based on comparable sales in the area McNew determined the range in values for agricultural property to be from slightly below $1,000 per acre to an upper limit of $1,500 per acre. Based on these highest and best uses, the appraiser estimated the value of the Thomas tract at $1,200 per acre and the Campbell tract at $1,500 per acre.
The appraiser determined, however, that because these properties lay within the corridor needed by plaintiff for its generating plant and related facilities, the properties had a higher special use value which McNew determined to be $2,250, based primarily on several acquisitions of property by plaintiff for that amount. This was the amount plaintiff had offered defendants for the properties.
The Thomas defendants offered testimony by an engineer who had conducted tests on the Thomas property to show that there were lignite deposits beneath that property. Plaintiff countered with the testimony of an expert mining engineer who testified that because of the size and depth of the deposits, mining would be economically unfeasible and the deposits had no value.
As previously noted, the defendants offered no expert opinion evidence as to value. Defendants relied on recent sales of property in the general area to Phillips Coal Company as supporting a valuation higher than that given by plaintiff’s appraiser. One was a sale by Huckabay for $2,275 per acre and another was a sale of a 45-acre tract for $4,448 per acre. There was another sale by Bierden to Phillips for $2,280 per acre.
Plaintiff’s appraiser explained that the Lee and Huckabay properties were acquired by Phillips for a special purpose, that is, to relocate families that were to be moved in order for Phillips to mine certain properties. Phillips had encountered difficulty in finding a landowner willing to sell an approximately 40-acre tract suitable for subdivision development by reason of proximity to roads, utilities, and the like and the appraiser did not consider the prices paid or the properties involved in the Lee and Hucka-bay sales to be valid comparables. The property sold by Bierden to Phillips was for actual mining purposes and in this respect was not comparable to the subject properties.
The appraiser’s analysis of these sales makes sense and in the absence of expert opinion evidence relating these sales to the value of the subject property, these sales do not afford a substantial evidentiary basis for valuing the subject properties above the special use value placed thereon by plaintiff’s appraiser. In effect the trial court substituted its opinion of value for that of the only testifying expert. The opinion of a witness qualified and accepted as an expert should be given effect if and when it appears to be well grounded from standpoints of sincerity and good reasoning. City of Lafayette v. Babineaux, 297 So.2d 220 (La.App. 3d Cir. 1974); Lafayette Airport Commission v. Roy, 265 So.2d 459 (La.App. 3d Cir. 1972), writs denied 262 La. 1159, 266 So.2d 444 (1972), cert. denied 411 U.S. 916, 93 S.Ct. 1543, 36 L.Ed.2d 307 (1973). Where there appears no reason justifying the trial court’s refusal to accept expert testimony offered in an expropria *1004 tion proceeding the action of the trial court in substituting its own opinion as to the value is manifest error. State, Department of Highways v. Thurman, 231 So.2d 692 (La.App. 1st Cir. 1970).
Defendants also contend that the trial court was correct in considering as an element of the loss sustained by the defendants by reason of the taking the difficulty which defendants will experience in exercising their right to explore for minerals under the mineral reservations. In appropriate cases the value of minerals underlying property being expropriated may be taken into consideration in fixing the value of the property as a whole. There is also authority for taking into consideration a reduction in the present value of mineral rights caused by an interference with or prohibition against exercise of those rights resulting from the use to which the surface will be put, where there is evidence of the present value of the mineral rights and of the value of such rights after the taking. State, Sabine River Authority v. Salter, 184 So.2d 783 (La.App. 3d Cir. 1966).
In the instant ease, however, there is no evidence in the record as to the present value of the mineral rights or the effect of the taking on such value. The evidence relative to the lignite deposits underlying the Thomas tract is to the effect that although such deposits exist they have no economic value. Without an evidentiary basis in the record the assignment of any value or loss for this item is entirely speculative.
There is no evidentiary basis in this record to support a value for the property taken higher than that fixed by plaintiff’s appraiser, whose appraisal is based on sound reasoning and judgment and whose value estimate is based on special use for plaintiff’s purposes, which value is substantially higher than the value based on existing highest and best use of the property.
By supplemental brief the Thomas defendants contend that legal interest should have been granted from the date of taking, which defendants argue occurred after the 15th day from service at which time defendants should be considered as having waived the right to contest the expropriation (see LSA-R.S. 19:6 and 7), rather than from the date of rendition of the judgment. Defendants’ novel argument has no merit. The record does not indicate that the property has been appropriated to the plaintiff’s use. In Trunkline Gas Company v. Rawls, 394 So.2d 1250 (La.App. 2d Cir. 1981) writ denied 400 So.2d 904 (La.1981), we held that legal interest is due from the date of the judgment or from the date the plaintiff appropriates the property to its use, whichever date is sooner. Legal interest in this case should run from the date of the judgment and the judgment is correct in this respect.
For the reasons assigned the judgments are amended to award $2,250 per acre for the property taken. The judgment in the Thomas case is reduced from $50,000 to $45,000. The judgments in the Campbell case are reduced from the sum of $75,187.50 to the sum of $56,390.63 for the interest of the Campbell Trusts and from the sum of $526,312.50 to the sum of $394,734.38 for the interest of Ira L. Campbell, Sr., individually and as administrator of the Estate of Anna Yearwood Campbell. As amended the judgments are affirmed. Costs of the appeal are assessed to the defendants.
Amended and as amended, affirmed.