283 So.2d 533 (1973)
STATE of Louisiana, Through DEPARTMENT OF HIGHWAYS
v.
Alma Francis CHRISTY.
No. 9486.
Court of Appeal of Louisiana, First Circuit.
August 23, 1973.
*534 R. J. Dodson, Baton Rouge, for defendant-appellant.
Johnie E. Branch Jr., Asst. Gen. Counsel, Baton Rouge, for plaintiff-appellee.
Before SARTAIN, BLANCHE and WATSON, JJ.
BLANCHE, Judge.
The only issue on appeal is the trial court's failure to award severance damages to the defendant landowner, Mrs. Alma Francis Christy. At trial it was stipulated that the part taken (9.611 acres) was valued at the sum of $3,000 per acre and the improvements were valued at the sum of $1,358. Since no award was made for severance damages, the trial court found just compensation to be the sum of $29,191. We affirm.
Prior to the taking, the defendant's property was traversed by the Louisiana & Arkansas Railroad and the Old Perkins Road. Mrs. Christy and her husband resided on *535 the property and used various portions of it for pasture, to grow hay and for truck farming. That part of Mrs. Christy's property lying north of the railroad right of way was considered by all of the appraisers as not being in any way affected by the taking. That part of the property lying south of the railroad right of way was divided by the taking into three parts. One part, triangular in shape, contains 2.881 acres and is located south of the railroad track and north of the Old Perkins Road. Another tract, also triangular in shape, contains 4.981 acres and is located south of the Old Perkins Road and north of the right of way. Another part separated from the other two parts by the right of way lies south of the right of way and contains 12.924 acres. This remainder has a frontage of approximately 50 feet on the Old Perkins Road.
After the taking but prior to the date of trial, Mrs. Christy sold six acres from the tract to Barber Brothers Contracting Company, Inc., for the sum and price of $18,000, or $3,000 per acre. The tract thus sold is the least accessible of all of the remaining property, and to obtain ingress and egress to the Old Perkins Road Mrs. Christy granted the purchaser a servitude of passage of 50 feet over the remaining 6.924 acres which she owned.
Appellant assigns as error the lower court's consideration of the foregoing sale in determining that plaintiff has suffered no severance damage. No other error was assigned but our review of the case is with the view of also determining whether the trial court committed any error in connection with its award for just compensation.
Undoubtedly, the trial judge did rely on this sale in concluding that there was no severance damage, for in his Written Reasons for Judgment he stated as follows:
"In the present case, the stipulated value of the land before the taking was Three thousand and no/100 ($3,000.00) Dollars per acre. The landowner sold between the date of the taking and the date of trial, six (6) acres that were the most inaccessible and most landlocked of all her property for Three thousand and no/100 ($3,000.00) Dollars per acre. It is difficult to see that she has suffered any severance damages. If the least desirable portion of her property sells for that amount, it is illogical to contend that more accessible and desirable property will sell for any less. The Court, therefore, finds that there were no severance damages." (Written Reasons for Judgment, Record, p. 41)
Sales of property occurring after a taking are not considered as having probative value to estimate the value of the property taken.
However, severance damages are to be estimated as of the date of the trial. LSA-R.S. 48:453; State, Department of Highways v. McPherson, 261 La. 116, 259 So.2d 33 (1972)
It seems logical to us that sales occurring during the time between the taking and the time of trial may be used to estimate the diminution in value of the remainder as a result of the taking as long as they are bona fide market transactions.
No doubt the sale of property to Barber Brothers was occasioned by the need for landfill for the construction project, because the evidence shows that dirt was removed from this land for that purpose. To this extent we conclude that the property was purchased by Barber Brothers for its own special purpose rather than for rural residential homesites, which latter use we are convinced is the property's highest and best use. Therefore, because of this circumstance we do not give serious weight to the foregoing sale as evidence that the property suffered no damage.
On the question of severance damage, Mr. Dan Carlock, an expert for the Department, testified that in his opinion the highest and best use of the property before the taking was for rural residential homesites *536 valued at $3,000 per acre. He was of the opinion that both remainders of 2.881 and 4.981 acres were of sufficient size and shape to be utilized as residential homesites. As to the 12.924 acre remainder, it was his opinion that it could be used for several homesites. Mr. George Platt, the other expert witness for the Department, testified that after the taking the remainder could not be sold for less than the "before value" for residential homesites with acreage, and he likewise estimated that no severance damage occurred to the remainder of the landowner's property.
Mr. Kermit Williams appeared as an expert for the landowner and was of the opinion that the subject property "would lend itself quite well to small industries, such as the one right down the road, Louisiana Concrete Products," although he admitted elsewhere in his testimony that as an alternative the property could be used for rural homesites. Mr. Curtis Book, the other expert witness for the landowner, also testified similarly, stating that the highest and best use of the land was for small industries and that there was a very strong probability that developers would find the site attractive for small acreage homesites. Both of these appraisers used a percentage method of diminution in value based on the land's loss of utility as an industrial site because of its shape, size and loss of access to the railway. However, it is to be noted that two of the remainders are every bit as accessible to the railroad as they were before the taking and are also easily accessible to the Old Perkins Road. Additionally, these percentage diminutions were not based on any competent market data.
Where the opinion of the expert as to severance damage is based on the percentage method of diminution in value and is not based upon any actual evidence of market value and could not be justified upon any sound reason which would effect a decrease in market value, such testimony must be considered only as an individual and unsupported expression of opinion. Louisiana Power & Light Company v. Pipes, 188 So.2d 639 (La.App.2nd Cir. 1966).
Notwithstanding the weakness of the testimony of the landowner's experts concerning severance damages, the damages to which these witnesses testified were predicated upon the assumption that the highest and best use of the land was for small industry, which premise we reject. Our review of the evidence convinces us that the area is rural. Except for the isolated use of one tract by Louisiana Concrete Products, it is primarily used for rural homesites where small farming operations are conducted. Beyond question, its highest and best use both before and after the taking is as testified to by the Highway appraisers, i. e., for rural residential homesites. We likewise agree with plaintiff's experts that the taking did not in any way damage the property for that use. In rejecting the opinion of the landowner's experts as to the highest and best use of the property after the taking, we must conclude that the landowner has failed to demonstrate by competent evidence that the remaining property suffered any damage.
For the above and foregoing reasons, the judgment of the trial court is affirmed, at the cost of defendant-appellant.
Affirmed.